UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, AND ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY,

Docket No.: 22-CV-4441 (SJB)

Plaintiffs,

-against-

TATIANA M. RYBAK, OLEG RYBAK, FABIOLA G. PERNIER AS EXECUTOR OF THE ESTATE OF JEAN PIERRE CLAUDE PERNIER, M.D., FRANCOIS JULES PARISIEN, M.D., FRANCIS JOSEPH LACINA, M.D., KSENIA PAVLOVA, D.O., ALFORD A. SMITH, M.D., DARREN THOMAS MOLLO, D.C., CHARLES DENG, L.AC., MARIA SHEILA BUSLON A/K/A MARIA MASIGLA, P.T., JPC MEDICAL, P.C., JPF MEDICAL SERVICES, P.C., JULES MEDICAL, P.C. N/K/A GIBBONS MEDICAL, P.C., JP MEDICAL SERVICES P.C., JFL MEDICAL CARE P.C., ALLAY MEDICAL SERVICES, P.C., FJL MEDICAL SERVICES P.C., PFJ MEDICAL CARE P.C., RA MEDICAL SERVICES P.C., KP MEDICAL CARE P.C., ALFORD A. SMITH MD, P.C., STRATEGIC MEDICAL INITIATIVES P.C., ACH CHIROPRACTIC, P.C., ENERGY CHIROPRACTIC, P.C., ISLAND LIFE CHIROPRACTIC PAIN CARE, PLLC, CHARLES DENG ACUPUNCTURE, P.C., MSB PHYSICAL THERAPY, P.C., JOHN DOES 1 THROUGH 20, AND ABC CORPORATIONS 1 THROUGH 20,

Defendants.

--------------------------------------------------------------------------------

**DEFENDANTS, OLEG RYBAK AND FABIOLA G. PERNIER AS EXECUTOR OF THE ESTATE OF JEAN PIERRE CLAUDE PERNIER, M.D.'S, MEMORANDUM OF LAW IN REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS EACH AND EVERY ALLEGATIONS IN THE COMPLAINT**

Matthew J. Conroy, Esq.
Robert E. Hewitt, Esq.
**SCHWARTZ, CONROY, & HACK, P.C.**
666 Old Country Road, 9th Floor
Garden City, New York, 11530
mjc@schlawpc.com
reh@schlawpc.com
*Attorneys for Defendants, OLEG RYBAK & FABIOLA G. PERNIER AS EXECUTOR OF THE ESTATE OF JEAN PIERRE CLAUDE PERNIER, M.D.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………...…………………… iii

PRELIMINARY STATEMENT…………………….……………………………… 1

STATEMENT OF ALLEGATIONS…………………..……………………… 2

ARGUMENT…………………………………………………..………………….…... 3

POINT I…….……………………………………………………………… 3

THE RICO CLAIMS ARE BARRED BY THE STATUTE OF
LIMITATIONS……………..……………………………………. 3

POINT II………………………………………………….……………………… 7

ALLSTATE FAILS TO PLAUSIBLY PLEAD THAT RYBAK
OPERATED OR MANAGED A RICO ENTERPRISE……………………. 7

A.  An Attorney Does Not Operate or Manage an Enterprise Through a
Pattern of Racketeering by Representing Clients in
Lawsuits……..……………………………………………… 8

B.  Rybak's Use of the Mails Was Not in Furtherance of the
Scheme to Defraud………………… 10

C.  Rybak Did Not Recruit Any Medical Professional Through
an Enterprise…………………………………… 11

D.  The Allegations that Rybak Directed, Owned or Controlled the PCS
are Conclusory…………………………………… 11

POINT III………………………………………………….………………. 12

ALLSTATE LACKS STANDING TO BRING A CIVIL RICO
CLAIM………………………………………………………… 12

A.  Allstate's Standing Under RICO is limited to the Recovery of
Only Those Damages Caused by Conduct that Violates
RICO, *i.e.*, Mail Fraud……………………………………… 13

B.  To the Extent Defendant PCs Provided "Medically
Necessary" Treatments, Fraud Was Not the Cause of Any
Damage to Allstate……………………………………… 14

    C.    Even With Regard to "Medically Unnecessary Treatments",
           Allstate Fails to Allege that any Alleged Act Mail Fraud was
           the Proximate Cause of Allstate's
           Injuries……………………………………….         16

POINT IV…………………………………………………………………….         21

    THE RICO COMPLAINT LACKS SUFFICIENT
    SPECIFICITY  UNDER FRCP 9(b)…………..……………………….         22

POINT V………………………………………………………………………         24

    ALLSTATE'S CLAIMS ARE BARRED BY THE NOERR-
    PENNINGTON IMMUNITY….............................................................         24

CONCLUSION………………………………………………………………         25

## TABLE OF AUTHORITIES

Cases:

*A Fisherman's Best, Inc. v. Recreational Fishing Alliance,*
310 F.3d 183, 191 (4th Cir. 2002)………………………….……………………………. 25

*Agency Holding Corp. v. Malley-Duff & Assocs.,*
483 U.S. 143, 156 (1987)…………………………………………………………………. 3

*Allstate v. Pavlova,* 610068/2017,
Supreme Court State of New York, Nassau County…………………………………..… 6

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)……………………………………….……………………......... 7

*Atlantic Gypsum Co., Inc. v. Lloyds International Corp.,*
753 F. Supp. 505, 512 (S.D.N.Y. 1990)…..……….…………………………………… 22

*Azrielli v. Cohen Law Offices,*
21 F.3d 512, 521 (2d Cir. 1994)……………………………………………………………. ?

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570 (2007)………………………..………………………………………… 7

*Bigsby v. Barclays Capital Real Estate, Inc.,*
170 F. Supp.3d 568, 575 (S.D.N.Y. 2016)……………………………………………….. ?

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,*
36 F. Supp.2d 560, 586 (E.D.N.Y. 1999)…………………………………………………… 21

*Cohen v. S.A.C. Trading Corp.,*
711 F.3d 353, 361 (2d Cir. 2013)…………….………………………………………….. 3, 6

*Conte v. Newsday, Inc.,*
703 F. Supp.2d 126 (E.D.N.Y. 2010)…………………………………………………… 11

*Di Vittorio v. Equidyne Extractive Industries,*
822 F.2d 1242, 1247 (2d Cir. 1987)………………………..…………………………… 22

*Double Alpha, Inc. v. Mako Partners, L.P.,*
2000 WL 1036034 at 3 (S.D.N.Y. July 27, 2000) (Chin, J.)……………………………… 23

*Elsevier Inc. v. W.H.P.R., Inc.,*
692 F. Supp.2d 297, 308 (S.D.N.Y. 2010)………………………………………………….. 11

iii

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,*
189 F. Supp.2d 385, 393 (E.D. Va. 2002)……………………………………………………… 24

*GEICO v. Parisien,*

16-cv-00818, E.D.N.Y…………………………………………………………………………. 6

*Goldfine v. Schienza,*
118 F. Supp. 392, 396 (S.D.N.Y. 2000)……………..………………………………………. 21

*Gould v. ILKB, LLC,*
2022 WL 2079652, *8 (E.D.N.Y. 2022)…………………………………………………… 3

*Griffin v. McNiff,*
744 F. Supp. 1237, 1256 (S.D.N.Y. 1990), *aff'd,* 996 F.2d 303 (2d Cir. 1993)………….. ?

*Handeen v. LeMaire,*
112 F.3d 1339, 1348 (8th Cir. 1991) …………………………………………………….. 8

*Holmes v. Securities Inv. Protection Corp.,*
503 U.S. 258 (1992)………………………………..………………………………………12, 17, 22

*Hutton v. Klabal,*
726 F.Supp. 67, 72 (S.D.N.Y.1989)……...………………………………………………… 22

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH,*
335 F.3d 303, 320 (4th Cir. 2003)………………………….……………………………… 24

*In re Jacobs,*
394 B.R. 646, at 663 (E.D.N.Y. 2008)……………………………………………………… 12

*Int'l Broth. Of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris Inc.,*
196 F.3d 818, 827 (7th Cir. 1999)…………..………..…………………………………… ?

*IUE AFL-CIO Pension Fund v. Herrmann,*
9 F.3d 1049, 1057 (2d Cir. 1993)…………………………………………………………. 22

*Katzman v. Victoria's Secret Catalogue,*
167 F.R.D. 649, 655 (S.D.N.Y. 1996)...………………………………………………….. 21

*Kim v. Kimm,*
884 F.3d 98, 104 (2d Cir. 2018)…………………………….………………………………. 8, 9

*Klehr v. A.O. Smith Corp.,*
521 U.S. 179, 194-196 (1997)………………………………………………………………. 4

*Kolbeck v. LIT America, Inc.,*
923 F. Supp. 557, 569 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d. Cir. 1998)................23

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,*
191 F.3d 229, 235 (2d Cir. 1999).......…………………………………….….….. 16, 17, 18, 20

*Lefkowitz v. Reissman,*
2014 WL 925410, *4 (S.D.N.Y. March 7, 2014)………………………………………….. ?

*Luce v. Edelstein,*
802 F.2d 49, 54 (2d Cir. 1986)…………………………………………………………….   22

*Mills v. Polar Molecular Corp.,*
12 F.3d 1170, 1175 (2d Cir. 1993)………………………….…………………………….   23

*Nasik Breeding & Research Farm, Ltd. v. Merck & Co.,*
165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001)…………..…………………………………   22

*Newman v. Warnaco Grp.,*
335 F.3d 187, 193 (2d Cir. 2003)………………………….…………………………….   3

*Noerr-Pennington*
381. U.S. 657 (1965) ………………….……………………………………………………….24

*NYC v. Cyco.net,*
383 F. Supp. 2d 526, 546 (S.D.N.Y. 2005)…………………..……………………………. 21

*Pension Fund v. Herrmann,*
9 F.3d 1049, 1057 (2d Cir. 1993)………………………..…………………………………   ?

*Presbyterian Hosp., v. Maryland Casualty Co.*
90 N.Y.2d 274, 285 (1997)……………………………………………………………….   19

*Professional Real Estate Inv., Inc. v. Columbia Pictures Ind., Inc. I PRE,*
508 U.S. 49, 60 (1993)…………….……………………...…………………………….   25

*Republic of Kazakhstan v. Stati,*
380 F. Supp.3d 55, 61 (D.D.C. 2019) *aff'd*, 801 Fed.Appx. 780 (D.C. Cir. 2020)……….  8

*Reves v. Ernst & Young,*
507 U.S. 170, 177–79 (1993)………….………………………………………………   7, 8, 11

*Rosenson v. Mordowitz,*
2012 WL 3631308, *5 (S.D.N.Y. Aug. 23, 2012)…………………………………………   ?

*Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)*
473 U.S. 479 (1985)……………..……………………………………………………   13, 14

*Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP,*
20 F. Supp.3d 305 (E.D.N.Y. 2014)..............................................................................  16

*Snyder v. U.S. Equities Corp.,*
2014 WL 317189 (W.D.N.Y. 2014)..............................................................................  10

*Sosa v. DirecTV, Inc.,*
437 F.3d 923, 934-935 (9th Cir. 2006)........................................................................  24

*St. Germain v. Howard,*
556 F.3d 261, 263 (5th Cir.), *cert. denied,* 557 U.S. 920 (2009)..............................  8, 9, 10

*Thomas v. Baca,*
2007 WL 738545 (C.D. Cal. 2007)..............................................................................  9

*United States v. Altman,*
48 F.3d 96, 103 (2d Cir. 1995).....................................................................................  10

*United States v. Indelicato,*
865 F.2d 1370, 1373 (2d Cir.1989) (en banc)..............................................................  7

*United States v. Marino,*
277 F.3d 11, 27-28 (1st Cir. 2002)...............................................................................  11

*United States v. Medina,*
485 F.3d 1291, 1304 (11th Cir. 2007)..........................................................................  20

*United States v. Pendergraft,*
297 F.3d 1198 (11th Cir. 2002).....................................................................................  10

*United States v. Viola,*
35 F.3d 37, 43 (2d Cir. 1994).......................................................................................  7, 8

*Winters v. Jones,*
2018 WL 326518, *8–10 (D.N.J. 2018).......................................................................  8

*Yesa LLC v. RMT Howard Beach Donuts, Inc.,*
22 F. Supp.3d 181, 189 (E.D.N.Y. 2016).....................................................................  6

## STATUTES, DOCTRINE and RULES

18 U.S.C. §§ 1341.........................................................................................................  10

18 U.S.C. § 1961(4) .....................................................................................................  7

18 U.S.C. § 1962(c) ......................................................................................................  1, 7, 8

18 U.S.C. § 1964(c) ................................................................... 12, 18

Federal Rule of Civil Procedure 8................................................21

Federal Rule of Civil Procedure 9(b)..........................................22, 23

Federal Rule of Civil Procedure 12(b)(6).....................................  1

N.Y. Ins. Law § 5101 *et seq*................................................. 18

## PRELIMINARY STATEMENT

This Memorandum of Law, together with the accompanying Declaration of Matthew J. Conroy, dated July 3, 2023, with annexed Exhibits, is submitted on behalf of Defendant, Oleg Rybak, Esq. ("Rybak") and Fabiola G. Pernier ("Pernier")[1] pursuant to Fed. R. Civ. P. Rule 12(b)(6) in support of his motion to dismiss for Plaintiffs' (referred to herein as "Plaintiffs" or "Allstate") failure to state a claim upon which relief may be granted. Defendants incorporate the arguments made in the Co-Defendants' motion to dismiss by reference herein and particularly the arguments seeking to dismiss the state law claims for fraud, unjust enrichment, and declaratory judgment.

Allstate's Complaint is simply a retaliatory attempt to slander and harass an attorney who has zealously represented his clients in successfully pursuing New York No-Fault collections and personal injury claims against Allstate and its insureds. Having failed in the *nisi prius* courts to avoid making payments required under the No-Fault law, Allstate now seeks a second bite at the apple *via* a Federal RICO lawsuit both to avoid paying the outstanding medical bills of its insureds and to recoup payments already made. Allstate has filed a prolix Complaint that alleges eighteen (18) counts under the Civil RICO Act (18 U.S.C. § 1962(c)); and pendant state claims consisting of two (2) counts of fraud; one (1) count of unjust enrichment/restitution; and two (2) counts for declaratory judgment, one federal, one state. Allstate alleges that the medical services provided to its insureds were: (1) not medically necessary; (2) not provided; and (3) not billed in accordance with New York State's Workers' Compensation Fee Schedule; as well as violative other aspects of New York Law. Allstate also claims that Rybak "controlled" the medical providers who are named as Defendants ("Defendant PCs") herein in litigation against Allstate.

---

[1] Fabiola G. Pernier is the daughter of Dr. Pernier who died in 2017 and is not a doctor herself.

1

Rybak is an attorney who has successfully represented many of the Defendant PCs in No-Fault collection actions against Allstate. He is not a provider of healthcare treatment, goods, and/or services. For the reasons stated below, Allstate's Complaint must be dismissed as a matter of law against Rybak. In the event this Court dismisses Allstate's RICO claims, the Court should refuse to entertain pendant jurisdiction over the state law claims.

## STATEMENT OF ALLEGATIONS

Without specifying *what, when, where, and how*, Allstate alleges that Rybak, in concert with the Defendant PCs, operated or managed an association-in-fact enterprise, referred to in the Complaint as the "Flatbush Avenue Clinic Enterprise" (*Id.* at ¶¶ 559) in violation of RICO. Alternatively, Allstate alleges that Rybak was the behind-the-scenes operator and manager of seventeen (17) legal entity enterprises in violation of RICO.

Allstate seeks to deem fraudulent every claim, ever submitted, for every patient by the Defendant PCs for treatment, regardless of the severity of the injury, the patient's medical condition and prognosis, medical necessity of those services, or the dollar amount of the claim. Allstate attempts to weave all of its allegations into a so-called "racketeering" case based on the blunderbuss allegation that each and every one of the medical services were performed inadequately and pursuant to a "scheme" coordinated by Rybak and Defendant PCs. Based on this, Allstate demands the Court enter judgment declaring that it is not obligated to "pay the pending, previously denied and any future No-fault claims submitted by the Fraudulently Owned PCs …," due to Rybak's alleged control of the enterprises, (*Id.* at ¶ 880; *see also id.* at ¶ 887). As a matter of law, this Court should not countenance such a pleading.

Allstate's Complaint is replete with irrelevant, scandalous, and defamatory allegations. As an example of irrelevant allegations, Allstate's Complaint contains nine (9) paragraphs describing

2

Rybak's alleged relationship with Jaime Gutierrez, M.D., Alleviation Medical Services P.C., and
JGG Medical Care P.C. (*DE at* ¶¶ 211 – 219). Allstate omits the fact that these providers are *not*
*members* of any enterprise identified by Allstate and are *not* named as defendants in Allstate's
Complaint. This is done solely to poison the Court against Rybak for the actions of others and
indicative of the drafting of non-cognizable claims. Likewise, Allstate throws in inaccurate and
irrelevant "facts" concerning Tatiana Rybak going back 25-years, which have no relation to the
"enterprises" alleged by Allstate and nothing to do with Rybak. (*DE 1* at ¶¶ 15 – 19, 31-33, 64,
192 – 204.) This is nothing more than an effort to taint Rybak as guilty by familial association,
despite each being a separate legal individual.

## ARGUMENT

### POINT I
### THE RICO CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The statute of limitations for a civil RICO claim is four years. *Cohen v. S.A.C. Trading
Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (citing *Agency Holding Corp. v. Malley-Duff & Assocs.*,
483 U.S. 143, 156 (1987)). The limitation period begins to run when the Plaintiff discovers or
should have discovered its injury, *Id.*, and accrues when the Plaintiff has "actual or inquiry notice
of the injury." *Id.* Inquiry notice is triggered when the Plaintiff receives information that "relates
directly to the misrepresentations and omissions the plaintiffs later allege in their action against
the defendants" (quoting *Newman v. Warnaco Grp.*, 335 F.3d 187, 193 (2d Cir. 2003). *Id.*
Critically, there is no requirement that the triggering information detail every aspect of the
fraudulent scheme alleged by the Plaintiff. *Id.* If the Plaintiff fails to inquire once the duty arises,
as here, knowledge is imputed to Plaintiff as of the date the duty arose. *Id.* at 361-362. Dismissal
is required when the Complaint and papers integral to the Complaint demonstrate that a reasonable
Plaintiff of ordinary intelligence possessed sufficient facts and information to trigger the duty to

3

inquire about even the possibility of fraud and failed to do so within the limitations period. *Gould v. ILKB, LLC*, 2022 WL 2079652, *8 (E.D.N.Y. 2022). Moreover, the limitations period will not be tolled unless the Plaintiff exercised reasonable diligence upon receiving inquiry notice. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-196 (1997).

Allstate filed its Complaint on July 28, 2022. (DE 1) Yet Allstate complains that – long before July 28, 2018–the Defendant doctors and Professional Corporations ("PC") submitted claims for treatments that were *facially* invalid. Given that the Defendant doctors and PCs sought reimbursement for treatments that Allstate *now* claims were *facially* invalid long before July 28, 2018, Allstate was on actual notice of its alleged injury when it received these supposedly *facially* invalid claims, and therefore on inquiry notice of the alleged scheme to defraud more than four years before it filed this action.

For example, Allstate claims that Defendant Deng "routinely billed" Allstate for cupping treatments even though cupping is "rarely, if ever, recommended." (DE 1 at ¶ 320)[2] Exhibits to its Complaint establish that Deng sought reimbursed for cupping treatments with dates of service in early 2017. (DE 1-4, Ex. 12) Accordingly, Allstate was necessarily aware that Deng was fraudulently billing Allstate for facially invalid cupping treatments long before July 2018.

Likewise, Allstate claims that "many of the EMG reports[3] submitted by Defendants to Allstate failed to reflect the performance of the required number of limb muscles to constitute a full limb of EMG for which Defendants billed …." (DE 1 at ¶ 390) Allstate's own exhibits reflect that Deng *last* sought reimbursement for EMG treatments with dates of service in 2017. (DE 1-4,

---

[2] Cupping involves creating suction on the skin using a cup. Negative pressure after it is placed on the skin to reduce muscle pain.

[3] Electromyography (EMG) and nerve conduction studies are tests that measure the electrical activity of muscles and nerves.

4

Ex. 13, 14, 15, 16) Accordingly, Allstate was necessarily aware of these *facially* invalid EMG reports long before July 2018, and those reports, as a matter of law, triggered Allstate's duty to inquire into whether the Defendant doctors and PCs were engaged in a fraudulent billing scheme.

Again, Allstate claims that Defendant Island Life Chiropractic submitted reimbursement requests that were based on *facially* invalid pf-NCS graphs[4]. The graphs were *facially* invalid because they reflect "no measurements of distance, making it impossible to measure velocity, or speed." 쟤쟤(DE 1 at ¶ 429) Allstate's exhibits reflect that they received at least sixty (60) reimbursement requests from Defendant Island Life Chiropractic based on Pf-NCS tests between 2011 and 2016. (DE 1-4, Ex. 17) Given these alleged facially invalid Pf-NCS graphs, Allstate had actual, and inquiry notice of the alleged scheme to defraud more than four years before it filed its Complaint. Allstate further claims that "Defendant Doctors ... billed Allstate for Physical Capacity Testing using CPT Code 97750, which is a time-based code, the bills submitted reflected billings for six units of time at \$41.66 each, resulting in uniform services for \$249.96, which is implausible given that one-on-one time spent with Covered Persons ... would normally be different for each Covered Person's appointment." (DE 1 at ¶ 473) Despite the so-called facially implausible and invalid nature of these bills under CPT Code 97750, Island Life Chiropractic submitted its *last* request for payment under CPT Code 97750 with dates of service in 2017, more than four years before its Complaint was filed. (DE 1-4, Ex. 19)

Allstate also alleges fraud in connection with dry needling treatments, stating that "Defendant Doctors ... routinely billed Allstate for excessive trigger point injections and dry

---

[4] Pain Fiber Nerve Conduction Studies (pfNCS) are used to improve the diagnostic accuracy and effectiveness of treatment for spinal pain.

needling insertions,[5] with some Covered Persons purportedly receiving as many as 96 dry needling insertions and 16 trigger point insertions during single visits." (DE 1 at ¶ 526). Yet the reimbursement requests reflecting "excessive" dry needling treatments were necessarily submitted more than four years before the lawsuit was filed. Specifically, Allstate's records reflect that it *last* received a request reimbursement for trigger point injections and dry needling for a date of service on July 26, 2018. (DE 1-4, Ex. 23 at 11)

These are just examples of reimbursement requests that – according to Allstate's Complaint -- were *facially* invalid at the time they were submitted to Allstate. According to Allstate, all of these facially invalid requests evidence fraud. Yet, the reimbursement requests were submitted more than four years before Allstate filed this action.

Previous Allstate lawsuits also establish that it had notice of many of the claims set forth in the Complaint long before July 28, 2018. In *Allstate v. Pavlova*, 610068/2017, Paragraph 7, (Complaint, Conroy Aff. Ex. B) filed on September 26, 2017, Allstate alleged there were serious issues relating to the control and ownership of Ksenia Pavlova's practice. In *Pavlova*, Allstate referenced the RICO case *GEICO v. Parisien*, 16-cv-00818, which first put Allstate on notice at the latest in 2017 when it cited the case as to numerous Co-Defendants' (Parisien, Pavlova, Mollo, Deng, Masigla , Allay Medical Services, P.C., and Island Life Chiropractic Pain Care) potential issues with fraudulent billing, ownership, and control.  (Complaint, Conroy Aff. Ex C).

Based on no more than the multiple examples set forth herein, and there are many more, Allstate had – at a minimum – actual knowledge of fraud as well as sufficient triggering information to investigate the alleged scheme long before July 28, 2018. *Cohen v. S.A.C. Trading*

---

[5] Dry needling is a treatment that healthcare providers use for pain and movement issues associated with myofascial trigger points. With this technique, a provider inserts thin needles into or near your trigger points. The needles stimulate your muscles, which causes them to contract or twitch.

*Corp.*, 711 F.3d at 361. Allstate alleges no facts indicating it engaged in its duty of inquiry. "'When a plaintiff shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'" *Yesa LLC v. RMT Howard Beach Donuts, Inc.*, 222 F. Supp.3d 181, 189 (E.D.N.Y. 2016). Thus, the Court must determine that Allstate's RICO claims are time barred.

Accordingly, the Court is required to impute that Allstate was aware of the alleged scheme to defraud *long before* July 28, 2018, meaning that the Complaint filed on July 28, 2022, is barred by RICO's four-year statute of limitations. *Id.* at 361-362.

## POINT II

## ALLSTATE FAILS TO PLAUSIBLY PLEAD
## THAT RYBAK OPERATED OR MANAGED A RICO ENTERPRISE

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allstate has not and cannot do this. The RICO statute makes it unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); see also *United States v. Indelicato*, 865 F.2d 1370, 1373 (2d Cir.1989) (*en banc*). Allstate fails to allege that Rybak conducted or participated in the conduct of *any* enterprise under section 1962(c).

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4)). RICO liability also requires proof that Rybak "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); see *Reves v. Ernst & Young*, 507 U.S. 170, 177–79 (1993). In

7

*Reves*, the Supreme Court held that a Defendant violates section 1962(c) only if he is part "of the operation or management of the enterprise itself." *Id.* at 185.

When applying *Reves*, the Second Circuit has held that the operation or management test requires that a defendant was – at a minimum – "consulted in the decision-making process" and exercised discretion in carrying out the affairs of the enterprise. *See United States v. Viola*, 35 F.3d 37, 43 (2d Cir. 1994). The facts alleged against Rybak do not satisfy the *Reves* test. To the contrary, Allstate alleges that Rybak engaged in the following conduct, vis-à-vis the enterprise: (1) siphoned proceeds from the Fraudulently Owned PCs to and for the benefit of himself; (2) through his law firm (The Rybak Firm PLLC), represented individuals who were purportedly treated at the Fraudulently Owned PCs to recover No-Fault Benefits and pursue claims and lawsuits for bodily injuries arising out of automobile accidents; (3) allegedly recruited one or more medical professionals to treat patients at the Fraudulently Owned PCs; (4) filed, through The Rybak Firm PLLC, tens of thousands of claims and suits against insurers to recover payment for allegedly fraudulent services purportedly provided to patients of the Fraudulently Owned PCs; and (5) directed, established, and/or facilitated the medical services protocol at the PCs. (*Id.* at ¶ 20.)

### A.   An Attorney Does Not Operate or Manage an Enterprise Through a Pattern of Racketeering by Representing Clients in Lawsuits.

In Rybak's role as an attorney representing clients in lawsuits (categories two (2) and four (4)), *above*, the law is clear that an attorney *does not* conduct an enterprise's affairs through the provision of regular legal services. *Handeen v. LeMaire*, 112 F.3d 1339, 1348 (8th Cir. 1991) (citing *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994). Moreover, a Defendant must participate in the enterprise through a pattern of racketeering. 18 U.S.C. § 1962(c). Courts uniformly hold that litigation activities – even if frivolous or fraudulent – cannot constitute acts of racketeering. *See, e.g., Republic of Kazakhstan v. Stati*, 380 F. Supp.3d 55, 61 (D.D.C. 2019), *aff'd*,

801 Fed.Appx. 780 (D.C. Cir. 2020) (stating that the filing of baseless litigation cannot serve as a
predicate acts for RICO); *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) ("frivolous, fraudulent,
or baseless litigation activities – without more – cannot constitute a RICO predicate act"); *Winters
v. Jones*, 2018 WL 326518, *8–10 (D.N.J. 2018) ("Numerous courts have rejected the theory that
the filing of complaints, along with other litigation activity, can be the basis of wire or mail fraud");
*St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir.), *cert. denied*, 557 U.S. 920 (2009) (attorney's
performance of unauthorized work was "at worst [a] violation[] of the rules of professional
responsibility" but not an act of racketeering); *Thomas v. Baca*, 2007 WL 738545 (C.D. Cal. 2007).

Allstate's claims against Rybak arise out of litigation he pursued on behalf of the firm's
clients. For example, Allstate alleges: (1) Rybak "is the principal of a law firm called The Rybak
Firm, PLLC, which has served as No-Fault counsel for the Fraudulently Owned PCs." (*DE 1* at ¶
66); (2) Rybak "[r]epresent[ed] individuals who were purportedly treated at the Fraudulently
Owned PCs (and who were in staged accidents) to recover No-Fault Benefits and pursue claims
and lawsuits for bodily injuries arising out of automobile accidents." (*Id.* at ¶ 219); (3) Rybak
"fil[ed], through The Rybak Firm PLLC, more than 50,000 claims and suits against insurers to
recover payment for fraudulent services purportedly provided to patients of the Fraudulently
Owned PCs and supporting such suits with bogus legal documentation." (*Id*) (4) "… O. Rybak
participated, facilitated promoted and profited from the scheme through serving as the
Fraudulently Owned PCs' and Paper Owners' No-Fault collections counsel …." (*Id.* at ¶ 562) (5)
"… O. Rybak controlled … collection of fraudulent No-Fault Claims by serving as its No-Fault
collections counsel." (*Id.* at ¶¶ 580, 596, 612, 628, 644, 660, 676, 692, 708, 724, 740, 756, 772,
788, 804, 820)

9

Moreover, the appropriate place for Allstate to raise such complaints about Rybak's cases

was in and as a defense in the underlying Civil Court Actions. If a party does not like the result of

a case, its recourse is to take an appeal, it does not get a do-over by bringing successive RICO

claims alleging that the opponent's litigation activities constituted mail/wire fraud and relitigate

under RICO. *See Kim*, 884 F.3d at 104. If a party brings fraudulent or baseless litigation, that fraud

must be addressed in the original action. The opposing party is not allowed to allege that the

litigation activities constituted mail/wire fraud in a subsequent RICO claim predicated on that

fraud. See *Kim v. Kimm*, 884 F.3d at 98, where the Second Circuit dismissed the RICO claims,

concluding "that allegations of frivolous, fraudulent, or baseless litigation activities – without more

– cannot constitute a RICO predicate act." *Id.* at 104. In *Snyder v. U.S. Equities Corp.*, 2014 WL

317189 (W.D.N.Y. 2014), the court dismissed the RICO claim holding "in the context of Civil

RICO claims based on fraudulent litigation, that a defendant's use of mail and wire to conduct

allegedly fraudulent "litigation activities" is insufficient to establish predicate acts of

racketeering." *Id*. At *7 and 8. *See also St. Germain v. Howard, supra*; *U.S. v. Pendergraft*, 297

F.3d 1198 (11th Cir. 2002).

**B.     Rybak's Use of the Mails Was Not in Furtherance of the Scheme to Defraud.**

With regard to Rybak's alleged use of the mails to "siphon" money out of the PCs (category

one [1], *above*), such use would have occurred *after* Allstate paid the PCs. According to Allstate,

the purpose of the alleged scheme to defraud was "to illegally seek reimbursement of benefits

under New York State's No-Fault system through fraudulently owned professional corporations

and/or pursuant to unlawful referral, fraudulent billing, and/or illegal fee-splitting schemes." (*DE

1* at ¶ 8.) A communication violates the mail fraud statute only if it is in furtherance of the scheme

to defraud. 18 U.S.C. §§ 1341. Once Allstate paid and reimbursed the Defendant PCs, the scheme

10

to defraud Allstate reached its fruition. Any use of the mails that occurs "after the scheme has reached its fruition," "cannot be said to be in furtherance of a scheme to defraud … even as incident to an essential part of the scheme." *United States v. Altman*, 48 F.3d 96, 103 (2d Cir. 1995). Thus, if Rybak allegedly used the mails to siphon money from the Defendant PCs, such use does not violate the mail fraud statute because they occurred *after* the scheme to defraud Allstate had reached its conclusion.

## C.   Rybak Did Not Recruit Any Medical Professional Through an Enterprise.

To violate RICO, a Defendant must conduct the affairs of the enterprise "through" a pattern of racketeering activity. 18 U.S.C. § 1962(c). A Defendant conducts the affairs of an enterprise "through" a pattern of racketeering activity when he "uses his position in the enterprise to commit the racketeering acts" or "when the resources, property, or facilities of the enterprise are used by the defendant to commit the predicate acts." *United States v. Marino*, 277 F.3d 11, 27-28 (1st Cir. 2002). While Allstate alleges Rybak recruited medical professionals (category three [3], *above*), there is no allegation that Rybak recruited any of the professionals "through" any of the alleged enterprises. If, as alleged, Rybak individually approached professionals and recruited them into the alleged scheme as alleged, Rybak's recruitment activities were not "through" the enterprise and did *not* violate RICO.

## D.   The Allegations that Rybak Directed, Owned or Controlled the PCS are Conclusory.

Finally, Allstate alleges in conclusory fashion that Rybak "directed, established and/or facilitated the medical services protocol at the Fraudulently Owned PCs," but such "vague and disconnected" allegations do not satisfy the *Reves* test. In *Conte v. Newsday, Inc.*, 703 F. Supp.2d 126 (E.D.N.Y. 2010), the court dismissed a similarly pled RICO claim holding that "[i]n this case, plaintiff has not alleged any facts that would demonstrate that any defendants participated in the

11

operation or management of the alleged RICO enterprise. Instead, … plaintiff generally alleges a variety of schemes, and then lists the names of defendants under each scheme without showing their specific involvement in managing the affairs of the enterprise." *Id.* at 135; *see also*, *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp.2d 297, 308 (S.D.N.Y. 2010) (dismissing RICO claim where the Plaintiff failed to show that any Defendant "exercised the slightest degree of control over either of the claimed enterprises"). Allstate alleges that Rybak participated in various schemes without plausibly alleging specifically *how* and *when* he participated in the operation and management of any enterprise; this is fatal to their claim. Allstate's effort to draw a negative inference against Rybak due to certain Defendant PC employees asserting their Fifth Amendment rights in nonrelated actions must fail as no independent evidence is cited. (*DE 1* at ¶¶ 238-239.) *In re Jacobs*, 394 B.R. 646, at 663 (E.D.N.Y. 2008).

## POINT III

### ALLSTATE LACKS STANDING TO BRING A CIVIL RICO CLAIM

RICO's civil remedies provision confers standing on anyone injured in their business or property "by reason of" a RICO violation. 18 U.S.C. § 1964(c). In the 1980s and early 1990s, federal courts were deluged with civil RICO claims. In *Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258 (1992), the Supreme Court held that section 1964(c) requires a Plaintiff to prove that the Defendant's acts of racketeering were not only the "'but for' cause of his injury, but [were] the proximate cause as well." *Id.* at 268. The Supreme Court explained that unlike the common law proximate cause, which is a question of fact left for the jury, RICO's statutory proximate cause standard presents a question of law. The Court held that "[a]t bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible and convenient…." [RICO] demand[s] … some direct relationship between the injury asserted and the

12

injurious conduct alleged." *Id.* at 268. The Court instructed lower courts to use proximate cause to block the federal "door[s] to 'massive and complex damages litigation [, which would] not only burde[n] the courts, but [would] undermine the effectiveness of treble-damages suits." *Id.* at 274.

Allstate's RICO claims fail to satisfy RICO's proximate cause standard. Allstate's RICO claims are predicated <u>only</u> on violations of the mail fraud statute, 18 U.S.C. § 1341. (*DE 1* at ¶¶ 52, 570, 586, 602, 634, 666, 682, 698.) A RICO Plaintiff "has standing if, and can only recover to the extent that, [it] has been injured in [its] business or property *by the conduct constituting the violation* …. '[a] defendant who violates RICO section 1962 is not liable for treble damages to everyone he might have injured by other conduct …." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985). To the extent Allstate seeks to impose liability on Rybak or other Defendants for violating New York's No-Fault Statute or medical practice standards, such conduct *does not* violate RICO. Rybak cannot be liable for treble damages even if such "*other conduct*" injured Allstate. Further, the alleged acts of mail fraud are neither the "but for" nor the proximate cause of Allstate's alleged injuries.

## A.    Allstate's Standing Under RICO Is Limited to the Recovery of Only Those Damages Caused by Conduct that Violates RICO, *i.e.*, Mail Fraud.

In *Sedima,* the Supreme Court held that a "plaintiff only has standing … and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation." 473 U.S. 496-497. Because Allstate's RICO claims are predicated exclusively on mail fraud, Allstate's RICO recovery is limited to the damages caused by the alleged mail fraud violations. (*DE 1* at ¶¶ 52, 570, 586, 602, 634, 666, 682, 698.) Consequently, Rybak is not liable under RICO for the other purported illegal activity alleged in the Complaint because the activity does not constitute acts of racketeering. For instance, a RICO claim cannot be predicated upon (and no Defendant faces RICO liability for): (1) procedures that

13

allegedly fail to comply with the standards of the medical profession; (2) fees or payments that allegedly violate New York's No-Fault Law, Insurance Law, Business Corporation Law, Education Law, or Public Health Law; (3) prescribing treatments that are not on New York's No-Fault fee schedule. (*See, e.g., DE 1* at ¶¶ 5-13, 44-49, 170, 136-191, 248-556.)

Allstate's effort to bootstrap these alleged state law violations into mail fraud violations to serve as a predicate for a Federal Civil RICO claim is the very type of abusive RICO pleading that RICO's proximate cause standard was intended to stop. Accordingly, to the extent Allstate's damages are directly caused by violations of New York statutes, Allstate cannot recover those damages under RICO – even if Allstate's allegations are proven true. *Sedima*, 473 U.S. 496-497. Allstate's recovery under RICO is limited to the damages caused *directly* by acts of mail fraud, and in essence, Defendant PCs allegedly violated the mail fraud statute by misrepresenting that some patient treatments were "medically necessary" – when in fact the treatments were not "medically necessary" – and receiving reimbursement from Allstate for those "medically unnecessary" treatments As noted, the payment of unnecessary medical expenses, the submitting of bills that result from fee-splitting, and much of the other allegedly wrongful conduct is based upon the alleged direct violation of New York law. To the extent Rybak or other Defendants are accused of violating the standards of the medical profession or of New York law, Allstate may be entitled to damages under other theories of relief – but not under RICO. *Sedima*, 473 U.S. at 496.

## B.   To the Extent Defendant PCs Provided "Medically Necessary" Treatments, Fraud Was Not the Cause of Any Damage to Allstate.

Allstate does not allege that all care provided by the Defendant PCs was "not medically necessary." (*DE 1* at ¶ 69, 72, 78, 81, 84, 87, 90.) Allstate does not allege that every patient was given formulaic, non-individualized care. It alleges that "almost every Covered Person" received the same care "regardless of their unique complaints and/or response to treatment." (*Id.* at ¶ 462

14

(emphasis added).)  In light of its allegations, Allstate's claim that it is entitled to an award of
damages based on all reimbursements paid to Defendant PCs is unsupportable as a matter of
pleading and law. Allstate further makes no effort to *differentiate* between patients receiving
"medically necessary" versus "medically unnecessary" treatment. Under RICO, Allstate may only
claim damages to recover for the reimbursement of treatment that was falsely represented to be
"medically necessary." In other words, if a treatment was "medically necessary," Allstate is not –
in fact – defrauded, and is not entitled to damages under RICO.

Allstate acknowledges that the appropriateness of any treatment depends on "the unique
circumstances of each Covered Person when discussing, for example, acupuncture services, range
of motion testing, and computerized muscle tests." (*DE 1* at ¶¶ 270, 299-300). Only a medical
expert can determine whether any treatment was "medically unnecessary" and, thus, whether any
particular request for reimbursement was fraudulent (and medical experts may disagree whether a
particular treatment was "medically unnecessary"). Allstate also acknowledges that not all pf-NCS
Testing performed by the Defendant PCs was fraudulent. Allstate alleges only that "in numerous
instances, Covered Persons reported that they were not having any pain, while the related pf-NCS
Testing purports to identify evidence of radiculopathy at multiple levels." (*Id.* at ¶ 418). Allstate
admits that "SSEP[6] may be useful in studying disorders of the brain and brainstem, spinal cord,
dorsal roots, and peripheral nerves, as well as in identifying clinically inapparent abnormalities
and lesions … and in certain conditions in which the diagnosis is uncertain" and that "SSEP is
now done in relatively rare circumstances …." (*Id.* at ¶¶ 481-482.) Thus, Allstate cannot plausibly

---

[6] A somatosensory evoked potential (SSEP) is an evoked potential caused by a physical stimulus
(usually a small electric pulse). Electrodes positioned over particular areas of the body record
responses of the SSEP, these are then observed as a reading on an electroencephalogram (EEG).

argue that *all* SSEP performed by the Defendant PCs was fraudulent. Yet it does. Allstate's pleading so overreaches that dismissal as a matter of law is mandated.

To establish RICO liability, Allstate cannot make the blanket argument that it was defrauded out of all the reimbursement received by the Defendant PCs. If a medical expert determines that such treatment(s) were "medically necessary" under the unique circumstances for that patient, then Allstate was not defrauded with regard to the particular reimbursement for that treatment. If Allstate is not prepared to offer individualized proof as to which treatments were "medically unnecessary," then its Complaint must be dismissed in its entirety. For example, in *Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis* U.S. LLP, 20 F. Supp.3d 305 (E.D.N.Y. 2014), the plaintiffs were a class of third-party payers who reimbursed insureds for the cost of the defendant's drug, which the defendant fraudulently marketed. *Id.* at 312-313. The court dismissed the plaintiffs' RICO claims because the claims hinged on individualized proof that "but for" the fraudulent marketing campaign, a particular plaintiff would not have been prescribed the drug when the court noted that there were a multitude of factors that impacted a doctor's decision to prescribe a drug, *e.g.*: "[a]n individual patient's diagnosis, past and current medications being taken by the patient, the physician's own experience with prescribing [the drug], and the physician's knowledge regarding the side effects of [the drug] ..." *Id.* at 325  The court held that the payers' RICO claims required "individualized proof" that but for the defendants' fraudulent marketing campaign, a patient would not have received the drug. *Id.* at 328. Since the plaintiffs were not prepared to offer such "individualized proof," the court granted the defendant's motion for summary judgment against the RICO claims. Similarly, Allstate's RICO claim must be dismissed for failure to be able to offer "individualized proof" establishing which patient treatments were "medically unnecessary."

16

C.    **Even With Regard to "Medically Unnecessary Treatments," Allstate Fails to Allege that any Alleged Act of Mail Fraud was the Proximate Cause of Allstate's Injuries.**

Even with regard to alleged "medically unnecessary" treatments, Allstate was not proximately injured by fraud. Direct injury is the key element for establishing proximate cause. *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999). Where a plaintiff complains of injuries that are wholly derivative of harm to a third-party, the plaintiff's injuries are generally too remote, as a matter of law, to support recovery. *Id.* at 236. Accordingly, applying *Holmes*, courts employ three policy factors to guide the analysis of whether an indirectly injured plaintiff lacks standing under RICO: (1) First, the more indirect injuries are, the more difficult it becomes to determine the amount of plaintiff's damages attributable to the wrongdoing as opposed to other, independent factors; (2) recognizing claims of the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs thus having to differentiate between different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries; and (3) struggling with the first two problems is unnecessary where there are directly injured parties not named who can remedy the harm without these attendant problems.

In *Laborers Local 17*, the plaintiffs were labor unions whose funds brought RICO claims against big tobacco companies, claiming that big tobacco had engaged in a conspiracy to deceive the general public with respect to the health risks of smoking. *Id.* Big tobacco moved to dismiss the Laborers Local 17's RICO claims on the basis that Laborer Local 17 were only indirectly injured parties who lacked standing under section 1964(c). In agreeing with big tobacco and dismissing the Laborers Local 17's RICO claims, the Second Circuit acknowledged the derivative nature of the Laborers Local 17's claims: "plaintiffs who are obligated to pay the medical expenses

17

of another may not recover against the tortfeasor who caused the damage, because their injuries
are indirect since they derive wholly from injuries sustained by the third party" and dismissed the
RICO claims *Id.* at 237.

Many of the factors that led the Second Circuit to conclude that proximate cause was
lacking in *Laborers Local 17* are present in, and doom, Allstate's Complaint. Like the Funds in
*Laborers Local 17*, Allstate's damages are derivative in nature. The allegedly directly injured
victims, if there are any, are the patients. Allstate alleges that the patients or Allstate's insureds
(*i.e.*, "Covered Persons") experienced several direct injuries. *(DE 1* at ¶¶ 263, 360, 541.) The
directly injured patients assigned their no-fault benefits to the "Fraudulently Owned PCs." (*Id.* at
¶ 134.). The patients, Allstate's insureds or "Covered Persons" were, according to Allstate,
subjected to the allegedly unnecessary services, treatments, therapies, tests, and misdiagnoses and
were allegedly unable to make informed medical decisions. Allstate is simply the no-fault insurer
obligated to pay Defendant PCs for the medically necessary medical services provided to Covered
Persons. (*Id.* (*citing* N.Y. Ins. Law § 5101, *et seq.*)) Any alleged injuries sustained by Allstate are
clearly indirect and derivative and cannot constitute legally cognizable claims.

As an indirectly injured Plaintiff, Allstate's standing under RICO section 1964(c) must be
evaluated in light of the three policy considerations enunciated in *Holmes*. (1) Allstate's allegations
highlight that many of its claimed damages are the result of its poor business practices rather than
Defendant Doctors' and PCs' alleged billing practices. Allstate concedes in its Complaint that
many of the supporting documents submitted by Defendant Doctors and PCs were facially
problematic to it for years, *e.g.*:

  - Notwithstanding that Cupping is an unproven and often dangerous treatment, Deng
    … routinely billed Allstate for Cupping treatment purportedly performed on
    Covered Persons, notwithstanding that Cupping is rarely, if ever, recommended
    …. (*Id.* at ¶ 320.);

18

- Many of the F-wave waveforms submitted by certain Defendant PCs … to Allstate in support of claims for reimbursement fail to reflect the performance of a sufficient number of stimulations to produce the required ten (10) F-waves and failed to identify ten (10) visible F-waves in each nerve tested. (*Id.* at ¶ 354);

- This consistent over-diagnosis of cervical and lumbar radiculopathy demonstrates that the Electrodiagnostic Testing was either not performed as billed, was fabricated, and/or was of no diagnostic value. (*Id.* at ¶ 375.;

- "… [M]any of the EMG reports submitted by Defendants to Allstate failed to reflect the performance of the required number of limb muscles to constitute a full limb of EMG for which Defendants billed …." (*Id.* at ¶ 390);

- "… [I]n the graphs submitted by Defendants in connection with their claims for reimbursement, which are clearly labeled as measuring velocity and/or latency, there are no measurements of distance, making it impossible to measure velocity, or speed." (*Id.* at ¶ 429);

- "… [T]he test results and supporting documentation submitted in connection with Defendants' claims for reimbursement for computerized range of motion and muscle testing reflected services that, if performed at all, were medically unnecessary and performed pursuant to a pre-determined treatment protocol irrespective of medical necessity." (*Id.* at ¶ 458);

- Defendant Doctors and PCs submitted Physical Capacity reports in support of billing for services rendered that "routinely" failed to include required information, such as "(i) total time spent with each patient …; (ii) time spend performing the selected protocol; (iii) time spent with the patient in providing any post-testing instructions; (iv) the testing elements of the protocols; (v) interpretation of the data collected; and/or (vi) the impact on the patient's plan of care …." (*Id.* at ¶¶ 471-472);

- "… Defendant Doctors … billed Allstate for Physical Capacity Testing using CPT Code 97750, which is a time-based code, the bills submitted reflected billings for six units of time at \$41.66 each, resulting in uniform services for \$249.96, which is implausible given that one-on-one time spent with Covered Persons … would normally be different for each Covered Person's appointment." (*Id.* at ¶ 473);

- "… Defendant Doctors … routinely billed Allstate for excessive trigger point injections and dry needling insertions, with some Covered Persons purportedly receiving as many as 96 dry needling insertions and 16 trigger point insertions during single visits." (*Id.* at ¶ 526);

- "… Defendant Doctors … failed either to create and/or submit this necessary documentation" (*Id.* at ¶ 556.)

19

Rybak is not responsible for Allstate's poor business practices that allowed reimbursement for "medically unnecessary" (and facially invalid) treatment when Allstate knew the supporting documentation was facially problematic. *Presbyterian Hosp.*, v. Maryland Casualty Co., 90 N.Y.2d 274, 287 (1997); *State Farm. Mut. Auto Ins. Co. v. Mallela*, 372 F.3d 500 (2d Cir. 2004). In this regard, it also bears noting that this principle of fraud loss causation extends even into criminal law. *See United States v. Medina*, 485 F.3d 1291, 1304 (11th Cir. 2007) ("There was no evidence presented that these claims were not medically necessary. Even though Tanya Moore testified that Medicare would not pay a claim if they knew parties were receiving kickbacks, this is not sufficient to establish a loss to Medicare").

Allstate does not play a critical role in the provision of health care in the United States, distinguishing Allstate claims from the claims of health insurance companies against big tobacco. *See, Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F. Supp.2d 560, 586 (E.D.N.Y. 1999) (the court found that the insurer was proximately injured by reason of the increased healthcare costs it paid because cigarette manufacturers misled smokers about the adverse effects of smoking; the court's decision to confer standing on an indirectly injured insurer was based largely on the role played by "the Blues" in the national healthcare system; for example, the court reasoned that "the Blues" are "not simply insurers"; "[t]hey are providers of the fundamental healthcare of the nation; "[t]hey are not ordinary passive insurers, but almost quasi-governmental entities in their effect on health care"). Unlike "the Blues," Allstate, as a provider of No-Fault auto insurance coverage, is simply an "ordinary passive insurer"[7] and its indirect injuries are not compensable under RICO. Moreover, the Second Circuit has never adopted the

---

[7] Allstate has 17.88% of the market share of the Property and Casualty Insurance in New York. See https://content.naic.org/sites/default/files/publication-msr-pb-property-casualty.pdf at p.25 (last visited October 20, 2022).

20

reasoning of the District Court of *Blue Cross*, and some courts have characterized *Blue Cross* as no more than a "thinly disguised refusal to accept and follow the Second Circuit's holding" in *Laborers Local 17, supra* at 827.

As in the *Laborers Local 17* case, Allstate's claim also presents the risk of multiple recoveries from different plaintiffs who may seek to hold Defendants liable. *Holmes*, 503 U.S. at 269. The patients – the purportedly directly injured parties, who according to Allstate were allegedly unable to make informed medical decisions – present the most likely risk of multiple recovery. Allstate's allegation that Defendant PCs and Doctors provided unnecessary medical treatment exposes those defendants to battery (unconsented to touching) claims on behalf of the patients, the directly injured parties; possible referral to the Office of Professional Medical Conduct; and subrogation claims from the patients' health insurers to the extent No-Fault is denied or the policies exhausted. (*DE 1* at ¶ 541.)

## POINT IV

## THE RICO COMPLAINT LACKS SUFFICIENT SPECIFICITY UNDER FRCP 9(b)

*Twombly* instructs that, with "certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Fed. R. Civ. P. 8 requires." 550 U.S. at 570, 127 S.Ct. at 1973. Civil RICO stands at the pinnacle of such cases, because of "high risk of abusive litigation." Indeed, courts have found that "Civil RICO is an unusually potent weapon — the litigation equivalent of a thermonuclear device," and "because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996). Courts look with particular scrutiny at Civil RICO claims, *Goldfine v. Schienza* 118 F. Supp. 392,

21

396 (S.D.N.Y. 2000), and "[t]his Court, [should] therefore, review the present Plaintiffs' civil RICO pleadings with particular scrutiny." *NYC v. Cyco.net*, 383 F. Supp. 2d 526, 546 (S.D.N.Y. 2005).

A primary purpose of the specificity requirement of Rule 9(b) "is to ensure that the defendant receives fair notice of plaintiff's claim, and is thus able to prepare a defense," *Hutton v. Klabal*, 726 F.Supp. 67, 72 (S.D.N.Y.1989), citing, *Di Vittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir. 1987). To satisfy the particularity requirement of Rule 9(b), the allegations should "specify the time, place, speaker, and content of the alleged misrepresentations." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993); *DiVittorio*, 822 F.2d at 1247, citing, *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). "These concerns are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" *Atlantic Gypsum Co., Inc. v. Lloyds International Corp.*, 753 F. Supp. 505, 512 (S.D.N.Y. 1990) (quotation omitted); *Nasik Breeding & Research Farm, Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001). Allstate's Complaint fails to satisfy the *heightened particularity requirements* for a RICO action under Rule 9(b). Allstate attributes much of the purported misconduct it alleges to "Defendants" generally, with no attempt to name specifically *who* did *what*, and *when* and *who* said what, or *who* knew what, at *what* time, or *who* prepared *what*.

Allstate alleges that it was defrauded through Defendant Doctors' manipulation of New York State Workers' Compensation Fee Schedules, but Allstate does not allege Rybak had knowledge of any New York State Workers' Compensation Fee Schedules, knowledge of a single treatment provided by the Defendant Doctors pursuant to the New York State Workers'

Compensation Fee Schedules, or offer any facts demonstrating how he participated in any fraudulent use of the Fee Schedules. (*See, e.g.,* DE 1 at ¶¶ 317, 321, 325, 410-411, 455, 469, 524.)

Allstate's Complaint alleges that an *unidentified number* of patients did not receive "legitimate medical treatment," without explaining *what* is a "legitimate medical treatment," in the first instance, and *what, when* and *how* the patients sustained injuries; in some instances, strains and sprains will heal without intervention. (DE 1). Allstate's Complaint rails about the identity of treatment under a so-called "Predetermined Treatment Protocol" ("PTP") theory, but its description thereof is inconsistent and filled with contradictions. To describe the purported PTP, Allstate uses the words "nearly" or "nearly identical" as modifiers nine (9) times (*see, e.g., DE 1* at ¶¶ 259, 289, 440-441, 522, 546; the word "virtually" twenty-five (25) times (*see, e.g., Id.* at ¶¶ 36, 243, 259, 262, 267-268, 273, 275, 281, 284, 297, 311, 315); and the vague term like "almost" (as in "almost every" or "almost identical") at least three (3) times (*see, e.g., Id.* at ¶¶ 462, 466, 862(f)). Use of a PTP does not mean that a patient is not individualized, and the treatment was not particular. Indeed, diversity of treatment (assuming, arguendo, that there should be vast diversity in treatment of soft-tissue injuries arising from automobile accidents) is demonstrated in the patient treatment summaries attached to the Complaint as Exhibit 1, in which only the most basic treatment methods (*i.e.,* physical therapy, chiropractic, and acupuncture) are consistent. Moreover, protocols and checklists have been properly utilized by hospitals and physicians for decades.

Rule 9(b) mandates that "a plaintiff [] plead with particularity by setting forth separately the acts complained of by each defendant." *Double Alpha, Inc. v. Mako Partners, L.P.*, 2000 WL 1036034 at 3 (S.D.N.Y. July 27, 2000) (Chin, J.). "Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant

23

of its role in the fraud and do not satisfy Rule 9(b)." *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d. Cir. 1998). Tarring all "Defendants" and singling out none, which Allstate repeatedly does, is a device that Rule 9(b) does not abide. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'."). Rybak, and the Court, are left to guess *what* the alleged misrepresentations for each claim are. *Which* claims are deemed to be "medically unnecessary"? *What* does "legitimate" mean? *Which* are the claims where the services never were performed in the first instance.

## POINT V

## ALLSTATE'S CLAIMS ARE BARRED BY NOERR-PENNINGTON IMMUNITY

*Noerr-Pennington* immunizes conduct protected by the First Amendment, including the pursuit of litigation, unless the defendant's litigation was a sham. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 320 (4th Cir. 2003). The plaintiff bears the burden of proving that the defendant engaged in sham litigation. Allstate's claims against Rybak trigger *Noerr-Pennington* immunity because they are based on litigation activity. (*DE 1* at ¶¶ 66, 219, 562, 580, 596, 612, 628, 644, 660, 676, 692, 708, 724, 740, 756, 772, 788, 804, 820, 836.) Allstate's damages are partially based on amounts it paid pursuant to collection actions and arbitrations. (*Id.* at ¶ 45.)

*Noerr-Pennington* immunity extends to arbitration proceedings. Arbitration is "part of the adjudicatory process and thus warrant[s] *Noerr-Pennington* immunity." *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp.2d 385, 393 (E.D. Va. 2002). Moreover, courts have held that *Noerr-Pennington* immunity applies not only to petitions filed with a court but to other activities that are within the "breathing space" of the constitutionally protected activity, *i.e.*,

24

"conduct incidental to the prosecution of the suit," including communications between private parties. *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 934-935 (9th Cir. 2006). Much of Rybak's allegedly wrongful conduct in this matter arises from its actions relating to court proceedings and client communications relating to those proceedings or anticipated proceedings.

Accordingly, *Noerr-Pennington* immunity shields Rybak from liability unless he brought sham claims, which he did not, and for which Allstate has not alleged any facts to support. The Supreme Court has established a two-part test to determine whether a given litigation is a sham. *Professional Real Estate Inv., Inc. v. Columbia Pictures Ind., Inc. I* ("*PRE*"), 508 U.S. 49, 60 (1993). The first factor is that successful litigation cannot be characterized as a sham. *See A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183, 191 (4th Cir. 2002). The second factor, *i.e.*, whether the litigant was subjectively motivated by an improper purpose is only considered if the litigation is objectively baseless. *PRE*, 508 U.S. at 60-61. Clearly, Rybak's collection actions against Allstate were largely successful, and therefore not baseless.

## CONCLUSION

The motion to dismiss should be granted as to Defendants Rybak and Pernier in its entirety.

Dated: New York, New York
July 3, 2023

*Matthew J. Conroy*
Matthew J. Conroy, Esq.

25